IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW U.D. STRAW, | ) | |
| Plaintiff, | ) | |
| v. | ) | 16 C 50387 |
| VILLAGE OF STREAMWOOD; VILLAGE OF BLOOMINGDALE; VILLAGE OF GLENDALE HEIGHTS; CITY OF ELGIN, | ) | Judge Virginia M. Kendall |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Andrew Straw, sued five municipalities for failing to shovel snow off of public sidewalks claiming they violated the Americans with Disabilities Act of 1990 (ADA), Title II, 42 U.S.C. § 12132 and Rehabilitation Act § 504, 29 U.S.C. § 701 *et seq.*. The five municipalities, the Village of Bloomingdale (Count I), the Village of Glendale Heights (Count II), the Village of Streamwood (Count III), the City of Elgin (Count IV), and Kane County (Count V) all moved to dismiss. Straw wants $50,000 in compensatory damages from each of the Defendants even though he personally never suffered any injuries because of the snow accumulation. Straw is a frequent litigator whose law license is suspended in Indiana and here until August 2017. He filed this suit, however, before that suspension and so the Court will address the pending motions to dismiss. Because Straw has no standing to bring the lawsuit, the case is dismissed for lack of jurisdiction without prejudice.

## FACTS

Straw, represents himself *pro se*[1], yet he is an attorney licensed in the State of Indiana (Compl. ¶ 1) and the Commonwealth of Virginia (Compl. ¶ 1). However, he is currently

---
[1] Plaintiff filed, and this Court granted his application to proceed *in forma pauperis*. (Dkt. 18.)

1

suspended from the practice of law in Indiana and this Court has also reciprocally suspended him from practicing in the Northern District of Illinois.

Straw alleges two types of disabilities, those he suffered from being poisoned at Camp Le Jeune in North Carolina as a child and those he suffered in a car accident. Specifically, he has problems with his right hip, right femur, left leg and ankle. (Compl. ¶ 6.) Although Straw is able to walk, he insists "I must be considered as a person who uses a wheelchair because I could be in that state with a single trip and fall, and the ADA says I am in that "wheelchair-using state" as a matter of law." (Compl. ¶ 6.)

Straw resides in Kane County, Illinois. (Compl. ¶ 3.) During the winters of 2015 and 2016, Straw documented piles of snow on or near sidewalks and in parking lots by taking photos of what he believed to be illegal accumulation blocking access on public sidewalks. Straw attached the photos to his Complaint. Straw took photographs of snow in Streamwood and Bloomingdale on March 8, 2015, (Compl. ¶¶ 13, 14); he was in Glendale Heights on March 8, 2016, (Compl. ¶ 15); and in Elgin on December 22, 2016. (Compl. ¶ 16.). Straw was also in Kane County on January 12, 2016 and when he was visiting the Kane County Election Board office to drop off his paperwork for his "congressional campaign" there was a pile of snow in the handicap parking space of the building. (Compl. ¶ 17.) On March 30, 2017, Straw and Defendant Kane County stipulated to the dismissal of the action, with prejudice. (Dkt. 54.) As to the remaining four Defendants, Straw does not provide any context to his allegations beyond that the snow piles were present on the alleged dates.

The photographs of the snow in these municipalities are attached to the Complaint. While the photographs taken in Bloomingdale and Elgin show snow piles on sidewalks, (Dkt. 1-15, Dkt. 1-17), the other photographs are not consistent with Straw's allegations. (Dkt. 1-15,

Dkt. 1-17.) Straw photographed two different locations in Streamwood. The Streamwood photographs do not depict an obstruction on sidewalks or in handicap-accessible parking spaces. In one of the locations, Exhibit 11, the photograph is taken from across the street from a Firestone Complete Auto Care parking lot. The snow covers some land between the parking lot and the street, but this land appears to be a grassy curb and there is no sidewalk in the photograph. (Dkt. 1-11.) In Exhibit 11.1, the second Streamwood location photographed, there are no visible snow obstructions and the sidewalk and parking lot appear to have been shoveled or plowed. (Dkt. 1-12.) In the photographs taken in Glendale Heights, Exhibit 13, there is snow on the ground, but the photographs do not clearly show any sort of obstruction. (Dkt. 1-16.)

In addition to the factual allegations in his Complaint, Straw also includes a section titled "Legal Argument For Proper Maintenance of Sidewalks, Curb Ramps, and Handicap Parking Spaces." (Dkt. 19 at 6.) Straw includes language from a letter that he sought from the Federal Highway Administration's Office (FHWA) during an unsuccessful, similar lawsuit against the City of South Bend, Indiana. (Compl. ¶ 8.) Straw also alleges in this section of the Complaint that the snow piles violate "the *Tinker* rule," from *Tinker v. Commissioner, NH Dept. of Transportation*, Case No. 2009-0012 (N.H. June 11, 2009), "the *Parker* rule," from *Parker, et al. v. Universidad De Puerto Rico, et al.*, 225 F.3d 1 (1st Cir. 2000), and "the *Barden* rule" from *Barden v. City of Sacramento, et al.*, 292 F.3d 1073 (9th Cir. 2002). (Compl. ¶ 18.)

In addition to compensatory damages, he asks "the Court to issue an injunction directing these five defendants to cease disability discrimination in all public services and facilities, including sidewalks and handicap parking and all other features owned or controlled by these defendants." (Compl. ¶ 56.)

The Court takes judicial notice of Straw's case filed in the Northern District of Indiana as well as the Declaration he filed (Dkt. 55) in this case because it forms the basis for his current suspension of his law license. *See Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012) (holding that public court documents are judicially noticeable); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (same, and collecting cases).

In 2016, Straw also drove around downtown South Bend and took photographs of alleged ADA-noncompliant building parking lots and then sued the city. *Straw v. City of South Bend*, 2016 WL 6996047 (N.D. Ind. 2016). The district court dismissed the suit due to lack of standing because Straw had no "concrete plans to visit any of these buildings for any reasons. Without such plans, he faces no actual imminent threat of injury from the alleged ADA violations."[2] *Id.* at *3. During the litigation, however, Straw's tactics were aggressive and at times unprofessional. For example, he requested that the magistrate judge and the district court judge recuse themselves based solely on their adverse rulings to him and not any actual misconduct. *Id.* at *1. He repeatedly sought the disqualification of the defense attorney on that case under Indiana Rules of Professional Conduct, including an accusation under Rule 8.4(g) that the attorney manifested bias or prejudice premised on disability. *Id.* at *1. Things went from bad to worse when defense counsel had to retain his own attorney because Straw purchased an internet domain in defense counsel's name and used it to direct criticisms at defense counsel. Straw then motioned for an order to show cause for why defense counsel's attorney should not be ordered to make her appearance in Straw's case, so that Straw could then ask her to be disqualified. *Id.* at *2. The district court also felt it necessary to warn Straw that he would not be permitted to continue his practice of filing superfluous motions that did not comply with the rules, "[f]or

---

[2] Plaintiff was more specific with respect to one of the locations, but his claim stemming from that violation was dismissed as time-barred. *See* 2016 WL 6996047 at *2.

instance, Straw recently filed a Notice [] naming his three public enemies (the federal government, the Indiana Supreme Court, and the City of South Bend)[.]" *Id.* at *5. Finding no success in Indiana, he now tries his claims in this Court.

In this case, Straw has filed a declaration that outlines the discipline actions against him for filing ADA cases and his intention to continue his work as a disability rights advocate. Straw further explains that he has sued the district judge in the South Bend action because "the federal judge allowed that Court to injure me and exonerate its own ADA violations," and his appeal in that case was denied on April 3, 2017. *Straw v. Jane E. Magnus Stinson*, Case No. 17- 1560, Dkt. No. 11 (7th Cir. 2017, April 3, 2017). Currently, Straw's license to practice law is suspended in four different courts.

## DISCUSSION

Straw brings his claims under Title II of the ADA and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 et seq. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *See Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016). The Rehabilitation Act provides "No otherwise qualified individual with a disability in the United States … shall solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by the Act. 29 U.S.C. § 794(a). "[S]ince Rehabilitation Act claims are analyzed under the same standards as those used for ADA claims," *Ozlowski v. Henderson*, 237 F.3d 837, 842 (7th Cir.2001), the Court will confine its analysis to the ADA.

Defendants have filed Motions to Dismiss based on lack of standing under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[3] (Dkt. 30, Dkt. 33, Dkt. 39, Dkt. 55.) Although Straw represents himself, *pro se* status does not apply because he is an attorney. *Godlove v. Bamberger, Foreman, Oswald, and Hahn, et al.*, 903 F.2d 1145, 1148 (7th Cir. 1990) ("Ordinarily, we treat the efforts of pro se applicants gently, but a pro se lawyer is entitled to no special consideration.") Not only is he an attorney, the ADA is his area of practice as he is a disability rights activist. (Compl ¶ 4) ("I have engaged in reform efforts to protect disability access[.]")

### I. 12(b)(1) Motions – Lack of Standing

Rule 12(b)(1) allows dismissal for "lack of subject-matter jurisdiction" of claims asserted in a complaint. In analyzing a motion under Rule 12(b)(1), this Court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir.2008) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)). Defendants move to dismiss, contending that Straw has failed to allege that he suffered a concrete injury-in-fact as required for Article III standing. "Article III of the Constitution limits federal judicial power to certain 'cases' and 'controversies,' and the 'irreducible constitutional minimum' of standing contains three elements." *Silha v. ACT, Inc.*, 807 F.3d 169, 172–73 (7th Cir.2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992) (internal citations and quotation marks omitted)). The three elements a plaintiff must show include: "(1) [plaintiff] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 172–73 (internal

---

[3] The City of Elgin only moved to dismiss under Rule 12(b)(6) and not 12(b)(1)

quotation marks omitted). In the specific context of the ADA, the complaint "must (1) allege past injury under the ADA; (2) show that it is reasonable to infer from [his] complaint that this discriminatory treatment will continue; and (3) show that it is also reasonable to infer, based on the past frequency of [his] visits and the proximity of [the public accommodation] to [his] home, that she intends to return to [the public accommodation] in the future." *Scherr v. Marriott Int'l*, 703 F.3d 1069, 1074 (7th Cir. 2013) (internal quotations omitted). "The plaintiff[], as the part[y] invoking federal jurisdiction, bear[s] the burden of establishing the required elements of standing." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir.2015) (internal quotation marks omitted).

The requirement of particularity means that the alleged injury "must affect the plaintiff in a personal and individual way," and the requirement of concreteness means the injury "must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Further, a "conjectural or hypothetical" claim of injury does not create Article III standing. *Id.* A generalized grievance is not sufficient for Article III because of "the necessarily abstract nature of [an] injury all citizens share." *Lance v. Coffman,* 549 U.S. 437, 441 (2007). Viewed in a light most favorable to Straw, his Complaint still amounts to nothing more than a generalized grievance.

In his Complaint, Straw only alleges that he is protected by the ADA and that snow piles were present on the sidewalk or in parking lots in the five Defendant municipalities violated his rights. (*See* Compl. ¶ 14, "Bloomingdale did this on March 8, 2015."; *see also* Compl. ¶ 15, "Glendale Heights did this on March 8, 2016."; *see also* Compl. ¶ 16 "The City of Elgin did this on December 22, 2016.".) He does not allege an injury that he suffered, or why he was in these locations, or whether he intends to return to these places; this context is necessary to demonstrate

7

standing. *Scherr*, 703 F.3d at 1074. By contrast, Straw describes the snow he encountered in Kane County with more detail. (Compl. ¶ 17.) It is perhaps no surprise, then, that Kane County is the only Defendant that answered the Complaint and stipulated to dismissal. With respect to the remaining Defendants, Straw does not plead facts demonstrating that he has standing to bring his lawsuit.

In his response briefs to the Defendants' motions to dismiss, Straw provides slightly more context, but still nothing concrete enough to show standing. The Court may consider Straw's response briefs for purposes of determining standing because district courts "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir.1995) (quotations omitted). "[W]hen considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation marks omitted).

In his Response to the city of Elgin, Straw states that the "sidewalk I documented was the sidewalk I use to walk to get food at the corner convenience store farther south on State Street in Elgin, the Shell station, and in fact I was going to get food on December 22, 2016." (Dkt. 35 at 1.) But there are still no facts amounting to a concrete injury. Straw does not even argue that he was unable to obtain his groceries. In his Response to Bloomingdale, Straw explains that he regularly accompanies his fiancé on her errands to businesses in Bloomingdale, including on March 8, 2015 when he delivered her mortgage payment to the Self-Reliance. (Dkt. 36 at p. 1.) Straw concedes that while in Bloomingdale, he *remained in his car* when taking the photograph

8

of the residential area and further stated that he was "not going to endanger" himself "by standing in the street." (Dkt. 36 at 4.) Viewing snow from his car does not amount to injury. Moreover, while Straw may provide an explanation for his presence in Bloomingdale, apparently his only reason for pulling over into this residential neighborhood was to take the photograph for his lawsuit. Next, Straw explains in his Response to Streamwood that his fiancé lives there. Further, on January 9, 2017, when he took the photographs in Streamwood, Straw was on his way to Walgreens to pick up medications. (Dkt. 43 at 4.) He states that "piles of ice blocked my way to Walgreens," (Dkt. 43 at 4), but he does not actually suggest that he fell or was physically harmed, that he was unable to retrieve his medication, nor that he intends to take that route in order to go to that Walgreens in the future. Because the Court grants Defendants' motions under Rule 12(b)(1), it need not address the 12(b)(6) basis for dismissal.

## II.     Plaintiff's Legal Arguments

Straw asks the Court to apply "rules" and law which he believes support his claim, but none of his citations actually provide authority to find standing under these circumstances. Specifically, Straw cites to three "rules" throughout his Complaint and briefing, but he lifts these rules from non-precedential, distinguishable cases. (*See*, Compl. ¶ 33) ("*Tinker* is the correct rule to use.") Straw also relies on a letter he received from the FHWA in an unsuccessful ADA case against the city of South Bend, Indiana. Those cases and the FHWA letter do not change the outcome of the sovereign immunity Rule 12(b)(1) analysis.

Straw cites to *Tinker v. Commissioner, NH Dept. of Transportation* throughout his Complaint and briefing on the Motion to Dismiss; in support of his position, he often refers to the "*Tinker* Rule." (*See, e.g.,* Compl. at ¶ 18.) But not only was *Tinker* decided by the New Hampshire Superior Court which has no authority to promulgate a rule that binds this court, *Tinker* was a non-precedential order even within the New Hampshire court system. The New Hampshire Supreme

9

Court rules distinguish between orders and opinions. Orders are unpublished and have no precedential value, while opinions are both publishing and may be cited freely. *See* N.H. S. Ct. R. 20(2). Straw next cites to the "*Parker* rule," but not only is the First Circuit case that the rule stems from not precedential, again, it is factually distinguishable. *Parker,* 225 F.3d 1. In *Parker*, the plaintiff's wheelchair overturned at the bottom of a noncompliant ramp that he was instructed to use during a visit to the University of Puerto Rico's Botanical Gardens and he broke his clavicle. *Id.* at 2. Straw has failed to allege any injuries. Also, the First Circuit specifically noted that defenses were available to the University and never heard by the district court, including sovereign immunity. *Id.* at 8. Finally, the third rule Straw cites to, the "*Barden* rule" is also gleaned from a non-precedential and distinguishable case. 292 F.3d 1073. In *Barden*, when various individuals with disabilities commenced a class action against the City of Sacramento, the district court held that the public sidewalks are not a service, program, or activity and are therefore not subject to the ADA or Rehabilitation Act. The Ninth Circuit clarified that sidewalks are subject to program accessibility regulations promulgated in furtherance of Title II and Section 504 of the Rehabilitation Act. This Court does not make a contrary finding to the Ninth Circuit's holding. Here, the Court is not faced with the issue of whether public sidewalks are subject to the ADA; instead the issue in this case is whether Straw has alleged an injury—again, he has not.

Straw also emphasizes that the "Letter of Finding" from the FHWA supports his claims. He includes in his allegations statements made by the FHWA Program Coordinator specifically relating to South Bend, "[FHWA's Program Coordinator] stated plainly: 'the on-site visit was conducted after a snow storm that had occurred in the City.'" (Compl. ¶ 28.) He goes on: "The FHWA has made perfectly clear what the obligations are on Bloomingdale." (Compl. ¶ 34.) The FHWA's investigated alleged violations in South Bend, Indiana and made findings as to parking lots in that city; the FHWA made no comment on the obligations of foreign municipalities. (Dkt. 1 at 54.)

Further, this Court is "not bound by informal administrative opinions. 'Interpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant *Chevron*-style deference.'" *Sehie v. City of Aurora*, 432 F.3d 749, 753 (7th Cir. 2005), quoting *Christensen v. Harris County*, 529 U.S. 576, 587 (2000).

Despite his citation to all of these "rules," in a Declaration Straw filed, he explained that this case, like the one he filed in South Bend, Indiana, "has special meaning for me because there is no precedent that I am aware of that would allow disabled people to force sidewalks to be cleared … following a snow event." (Dkt. 55 at ¶ 20.) Straw admits the precedent he desires does not exist.

### III. Request for Injunction

In addition to his claim for compensatory damages under the ADA and the Rehabilitation Act, Straw seeks injunctive relief, requesting that the "Court [] issue an injunction directing these five defendants to cease disability discrimination in all public services and facilities, including sidewalks and handicap parking and all other features owned or controlled by these defendants." (Compl. ¶ 56.) But "[t]o seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). For the reasons already discussed, Straw does not allege that he intends to return to any of the locations he photographed and therefore does not show an imminent threat of injury.

Even in *Hummel*, where the plaintiffs presented a specific situation of potential disability violations from snow accumulation in their county's courthouse parking lot, the plaintiffs still could not obtain injunctive relief. *Hummel,* 817 F.3d at 1017. Plaintiffs argued that their ongoing state cases gave them standing to seek injunctive relief against the courthouse because there was a chance that they would be called into court on a day when snow is on the ground.

11

There was no "real and immediate threat" calling for an injunction, "even assuming that the city's failure to remove the snow constitutes a violation of the federal disability statutes…. We could only speculate whether [plaintiffs'] cases will involve court appearances on future snowy days." *Id.* Straw's claims here are no less speculative. Indeed, while the plaintiffs in *Hummel* alleged that their ongoing cases in the courthouse would require their continued presence in the parking lot, here, Straw does not allege in his Complaint that he has any intention of returning to the random parking lots and sidewalks he photographed in the cities that remain in this action. Because there is no imminent threat, Straw's request for an injunction is denied.

"[O]nce a court determines it lacks jurisdiction over a claim, it perforce lacks jurisdiction to make any determination of the merits of the underlying claim." *Baba-Dainja El v. Americredit Financial Services, Inc., et al.*, 710 F.3d 748, 751 (7th Cir. 2013) (internal quotations omitted.) Accordingly, because the Court does not have jurisdiction over any of Straw's claims, his Complaint is dismissed without prejudice.

## CONCLUSION

For the foregoing, Defendants' Motions to Dismiss are granted and the case is dismissed without prejudice.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 4/25/2017